ANDREW J. DEFGUARD, PLAINTIFF AND DEFENDANT IN ERROR, v. NEW YORK AND' LONG BRANCH RAILROAD COMPANY, DEFENDANT AND PLAINTIFF IN ERROR.

Argued March 29, 1907—Decided June 17, 1907.

In an accident case a physician testified that he had seen and known a case where epilepsy followed a head injury seven years thereafter. On cross-examination it appeared that he had never treated a person for epilepsy resulting from a head injury, but in one instance he was told that an epileptic had, seven years before he saw him, been hit on the head by a bolt. *Held*, that, on motion, the testimony should have been struck out.

---

On error to the Supreme Court.

For the plaintiff in error, *John S. Applegate* and *Alan H. Strong*.

For the defendant in error, *Warren Dixon* and *Edmund Wilson*.

The opinion of the court was delivered by

REED, J. In this case the plaintiff recovered the sum of $4,500 for personal injuries sustained while crossing defendant's tracks in Long Branch. Plaintiff was riding in an open farm wagon, driven by one Sandersan, when the wagon was struck by an engine of the defendant and the plaintiff's head and knee were injured. The visible wounds described by the attending physician were a cut about an inch long over the right eye, a punctured wound in the rear part of the head, bruises around the ear and neck, a black and blue two-inch space on the back, a cut on the left side of the back, and an enlarged, crushed and twisted knee.

The amount of damages awarded by the jury obviously rested almost entirely upon the finding respecting the period during which the plaintiff would probably suffer from his injuries and the degree of physical distress and incapacity which would probably result from the injury during that period.

One of the probable results of the injuries put forward by his attending physician, Dr. Beach, was epilepsy. The probability that this dreaded disorder might spring from the injuries caused by the defendant was, if believed by the jury, a potent reason for awarding large compensatory damages. The testimony respecting this phase of the case was solely that of Dr. Beach, a general practitioner for twenty-one years at West Long Branch. Dr. Beach had been called after the accident to attend the injured lad and continued his attention thereafter. The doctor had stated the character of the wounds, the subsequent symptoms, the degree of recovery, as well as the degree of continued disability and the probable period of their continuance. After the defendant had closed its case, the plaintiff was permitted to recall Dr. Beach, and he was examined upon the subject of epilepsy. He was asked by counsel for the plaintiff: "How remotely from the time of accident may epilepsy appear as a result of the accident?" Under objection he was permitted to answer. He said: "I never saw any; never had any in my practice." To the next question, "Have you known cases?" he replied, "Yes, seen

them." To the question, "How remotely have you known epilepsy to follow causes of this kind—how long?" the answer was, "Seven years."

The cross-examination was as follows:

"*Q.* This case that you have been led to mention, where epilepsy occurred seven years after the injury, what was the injury?

"*A.* Well, it was a hit on the head from a sharp object—a bolt.

"*Q.* How was the injury inflicted?

"*A.* Inflicted by machinery.

"*Q.* What do you know about the case?

"*A.* Well, I seen the man; I know from the history of it.

"*Q.* You did not treat the man at any stage?

"*A.* No, I didn't treat it at all.

"*Q.* You didn't see the injury when it was new?

"*A.* No, I saw the place where it was struck; you could see the place.

"*Q.* How many years after the injury did you see it?

"*A.* Well, it must have been about fourteen years.

"*Q.* About what?

"*A.* Fourteen years.

"*Q.* Fourteen years afterward?

"*A.* Yes, sir.

"*Q.* And what was there to indicate the injury at the time you saw it?

"*A.* Just a small mark on the summit of the head.

"*Q.* Did you learn whether there had been a fracture of the skull?

"*A.* There wasn't any such history given.

"*Q.* What?

"*A.* The man didn't know.

"*Q.* The man didn't know?

"*A.* Didn't know about it.

"*Q.* Who gave you the history?

"*A.* Well, the gentleman who had the trouble was one of them.

"*Q.* The man who had the epilepsy?

"*A*. Yes, sir.

"*Q*. Told you about it, did he?

"*A*. Yes, sir; and then others, too.

"*Q*. ·What is that?

"*A*. Then I made inquiries about it, and others told me, too.

"*Q*. Who told you outside of the epileptic himself?

"*A*. Well, I can't—I know several did, but I can't recall just who they were.

"*Q*. You didn't get the history from any physician who had attended him, did you?

"*A*. No, sir.

"*Q*. And it is upon that case—upon what you learned concerning that case—that you base your opinion in this case that epilepsy will intervene?

"*A*. Oh, no.

"*Q*. Not upon that?

"*A*. No, sir.

"*Q*. It is not upon anything that you have ever had in your practice either, is it?

"*A*. No, sir; I never had a case of epilepsy by a head injury.

"*Q*. And you never saw a case of head injury followed by epilepsy except this one that you have told us about?

"*A*. Not that I now remember of.

"*Q*. And whether the epilepsy in that case occurred seven years after the injury or not, you took on the statement of the epileptic, did you?

"*A*. Yes, sir."

At the conclusion of the examination of this witness motion was made by defendant's counsel to strike out this testimony, which was overruled. Motion was then made to strike out that part of the testimony wherein it was said that epilepsy, within the knowledge of the witness, had followed cases of this kind as remotely as seven years. This motion was refused.

It seems that the trial judge refused to strike this out, because he thought defendant's counsel had himself evoked the

testimony by his cross-examination, and after discovering that it made against him, moved to strike it from the record. This view, however, is a misconception of the situation. When the physician stated that he had seen and known cases of epilepsy following seven years after an accident of this kind, there was no ground for an exception. The doctor had stated a fact as of his own personal knowledge. It was only after cross-examination that it appeared that his knowledge was entirely from hearsay, that he had only seen a small mark on the summit of a man's head, and was told that this man had been hit there with a bolt, and was told the date when the man was injured.

The cross-examination, therefore, offered the first opportunity to show the unsubstantial basis upon which the statement in the examination in chief rested. The motion to strike out was made in time, and was made for proper reasons, and should' have been granted. The error was an injurious one, for upon a jury uninstructed in the reasons for excluding hearsay testimony, the statement of the doctor was calculated to exercise a very powerful influence in increasing the amount of damages awarded to the plaintiff. Without considering other assignments of error, the judgment should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 15.